UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
PHILIPPE NAIM, SUZANE SUISSA-NAIM,
H.G.N., a minor, by her parents and natural
guardians PHILIPPE NAIM and SUZANE
SUISSA-NAIM,

                Plaintiffs,

   -against-

THE CITY OF NEW YORK; POLICE
DEPARTMENT OF THE CITY OF NEW YORK;
POLICE OFFICER HOWARD SLADE;
SERGEANT JOSEPH DURANTE; POLICE
OFFICER SHELDON RICHMOND; POLICE
OFFICER RAYMOND HIGGENS; JOHN DOES
1-6, being two unknown officers of the Police
Department of the City of New York who
arrested Philippe Naim on December 18, 2009,

                Defendant.
-------------------------------------------------------------x

**MEMORANDUM AND ORDER**
Case No. 10-CV-912 (FB)(RER)

*Appearances:*
*For the Plaintiff:*
ROBERT JOSEPH TOLCHIN, ESQ.
DANIEL S. SHIMKO, ESQ.
The Berkman Law Office, LLC
111 Livingston Street, Ste. 1928
Brooklyn, NY 11201

*For the Defendant*:
BARRY K. MYRVOLD, ESQ.
New York City Law Department
Special Federal Litigation
100 Church Street, Room 3-148
New York, NY 10007

**BLOCK, Senior District Judge:**

        On December 18, 2009, police officers, responding to a 911 call, entered plaintiffs' home and arrested plaintiff Philippe Naim ("Naim"). Pursuant to 28 U.S.C. § 1983, plaintiffs bring claims for false arrest, malicious prosecution, wrongful entry, and

1

excessive force against the City of New York and four individual polices officers.[1] Currently before the Court is defendants' motion for summary judgment dismissing plaintiffs' claims in their entirety. For the reasons stated below, that motion is denied.

I.

The following facts are drawn from the parties' summary judgment submissions and are uncontested except where noted. On December 18, 2009, at approximately 10:20 p.m., Naim and his wife, plaintiff Suzane Suissa-Naim ("Suissa-Naim"), were in their home in Brooklyn with their two daughters when an unidentified man began banging on the front door, threatening them and demanding to be let in. He was on the landing at the top of their front stoop, which consists of four concrete steps. One daughter, plaintiff H.G.N., called 911 to report that someone was attempting to break into the house.

The defendant police officers responded to the dispatcher's radio call of a burglary in progress. Shortly after the officers arrived, while they were on the sidewalk

---

[1] The body of the complaint names four officers and "John Does 1-2." Amend. Compl. ¶¶ 7-11. Following discovery, however, it is undisputed that only the four named officers were present. The plaintiffs also name the Police Department of the City of New York ("NYPD") as a defendant. The claims against the NYPD must be dismissed because it "is a non-suable agency of the City." *Jenkins v. City of New York*, 478 F.3d 76, 93 n. 19 (2d Cir. 2007).

The amended complaint alleged *Monell* claims, but plaintiffs stated in an informal conference on June 29, 2011, that they would withdraw these claims and have not raised them in any subsequent submissions. The Court deems any *Monell* claims abandoned. Plaintiffs also assert unidentified state law claims in their summary judgment submissions. They clarified during oral argument, however, that they are bringing federal claims only.

2

in front of the house attempting to communicate with the man on the stoop, Naim opened the front door and found himself "face to face" with the stranger. Naim Deposition, Ex. F to Declaration of Barry Myrvold, p. 80.2-6 ("Naim Dep."). According to Naim's account – which differs from that of the officers – the man took "one step" towards Naim, placing his foot "on the entryway," and Naim responded by pushing him backwards with one hand. Naim Dep. at 73-74. The man fell backwards over the banister and landed headfirst on the concrete sidewalk. He was knocked unconscious, sustained injuries to his neck and hand and required stitches on his thumb.

Instantly, at least two of the officers ran up the steps and pushed Naim into the house and onto the floor. During that process, Naim's head hit the floor; he alleges that one of the officers purposefully banged his head into the floor. Two of the officers held his legs while he was being handcuffed, another held his arms. Naim had a previous elbow injury and, as a result, he asked the police not to put the handcuffs on too tightly because his range of motion was limited. They told him to be quiet. Later, when Naim was in the police car, he complained that he was in pain, but the officers kept him handcuffed for 15 to 20 minutes following his arrest.

Naim was released at approximately 7:00 p.m. the following day. He was charged in a criminal complaint with assault in the third degree, reckless endangerment in the second degree, menacing in the third degree, and resisting arrest. On February 18, 2010, the charges were dismissed on the prosecution's motion because "the complaining

witness [was] uncooperative." Feb. 18, 2010, Trans., Ex. R to Declaration of Barry Myrvold, p. 3. Naim commenced this action on March 2, 2010.

II.

The Court will grant summary judgment where it "determines that there is no genuine issue of material fact to be tried." *Savino v. City of New York*, 331 F.3d 63, 71 (2d Cir. 2003) (citing Fed. R. Civ. P. 56(c)); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)). Where "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The court must "resolve all ambiguities and credit all factual inferences that could be drawn" in the non-movant's favor. *Vivenzio v. City of Syracuse*, 611 F.3d 98, 106 (2d Cir 2010).

**A. False Arrest**

Naim's first claim is for false arrest.[2] A § 1983 claim for false arrest grounded in the Fourth Amendment "is substantially the same as a claim for false arrest under New York law." *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996). The plaintiff "must show, *inter alia*, that the defendant intentionally confined him without his consent and without justification." *Id.* (citing *Broughton v. State of New York*, 335 N.E.2d 310, 314 (1975)). The

---

[2] Naim is the only plaintiff who brought claims for false arrest and malicious prosecution. With respect to excessive force, Suissa-Naim and H.G.N. did allege in the amended complaint that the police used force against them, but there is no evidence to that effect and they have not pursued the claim in their opposition to summary judgment. It is therefore deemed abandoned. *See, e.g., Lipton v. County of Orange, N.Y.*, 315 F. Supp. 2d 434, 446 (S.D.N.Y. 2004) ("This Court may, and generally will, deem a claim abandoned when a plaintiff fails to respond to a defendant's arguments that the claim should be dismissed.").

4

parties dispute whether Naim's arrest was justified by probable cause, which provides "an absolute defense to a false arrest claim." *Jaegly v. Couch*, 439 F.3d 149, 152 (2d Cir. 2006).

"[P]robable cause to arrest exists when the officers have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Weyant*, 101 F.3d at 852. The presence of an exculpatory defense, such as justification, may "negate probable cause" if the arresting officers are aware of the facts underlying the defense. *Jocks v. Tavernier*, 316 F.3d 128, 135 (2d Cir. 2003). Defendants, as police officers, are entitled to qualified immunity if there was even "arguable probable cause," i.e. "if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met." *Escalera v. Lunn*, 361 F.3d 737, 742 (2d Cir. 2004) (quoting *Golino v. City of New Haven*, 950 F.2d 864, 870 (2d Cir. 1991)).

Plaintiffs argue that a person of reasonable caution, knowing what the officers knew, would have believed that Naim's act was justified, abrogating probable cause. Under New York law, "a person in possession or control of any premises" may "use physical force upon another person when he or she reasonably believes such to be necessary to prevent or terminate what he or she reasonably believes to be the commission or attempted commission . . . of a criminal trespass upon such premises." N.Y. Penal Law § 35.20(2). A jury could determine that, given what the officers saw, Naim's action was so clearly justified under New York law that the officers lacked even arguable probable cause.

5

## B. Malicious Prosecution

Naim next asserts a § 1983 claim for malicious prosecution. The elements of that claim, too, are borrowed from New York law. *See Singer v. Fulton County Sheriff*, 63 F.3d 110, 114 (2d Cir. 1995). It requires: "(1) the commencement or continuation of a criminal proceeding by the defendant against the plaintiff, (2) the termination of the proceeding in favor of the accused, (3) the absence of probable cause for the criminal proceeding and (4) actual malice." *Broughton*, 335 N.E.2d at 314. Additionally, "[a] plaintiff asserting a Fourth Amendment malicious prosecution claim under § 1983 must . . . show some deprivation of liberty consistent with the concept of 'seizure.'" *Singer v. Fulton County Sheriff*, 63 F.3d 110, (2d Cir. 1995).

Plaintiffs concede that Officer Slade is the only defendant whose actions satisfy the first prong of the test; the malicious prosecution claim is therefore dismissed against the other officers.

With respect to Officer Slade, there are issues of fact regarding probable cause and malice. Defendants acknowledge that Slade commenced a criminal proceeding against Naim by signing the criminal complaint. The second element of the claim is also satisfied, as the underlying prosecution was terminated in Naim's favor. In the malicious prosecution context, "[a] dismissal without prejudice qualifies as a final, favorable termination if the dismissal represents 'the formal abandonment of the proceedings by the public prosecutor,'" *Smith-Hunter v. Harvey*, 734 N.E.2d 750, 754 (2000), and "the circumstances surrounding the termination are not inconsistent with the innocence of the

6

accused," *Cantalino v. Danner*, 754 N.E.2d 164, 167 (2001). The prosecutor in Naim's case moved to dismiss, formally abandoning the case, and this termination is not inconsistent with his innocence.

The presence of probable cause to initiate the criminal proceeding is an open factual question for the same reasons there may have been a lack of probable cause supporting the arrest; determination of probable cause in the malicious prosecution context is essentially the same as for false arrest. *See Colon v. City of New York*, 455 N.E.2d 1248, 1250 (1983).

Malice, in this context, requires "that the defendant must have commenced the criminal proceeding due to a wrong or improper motive, something other than a desire to see the ends of justice served." *Nardelli v. Stamberg*, 377 N.E.2d 975, 976 (1978). However, a "plaintiff need not demonstrate the defendant's intent to do him or her personal harm, but need only show a reckless or grossly negligent disregard for his or her rights." *Ramos v. City of New York,* 729 N.Y.S.2d 678, 691 (1st Dep't 2001). Because "[m]alice may be proven circumstantially and a jury may infer malice from the absence of probable cause," *Loeb v. Teitelbaum*, 432 N.Y.S.2d 487, 495 (2d Dep't 1980), the malice element is also a question for the jury.

Finally, Naim has demonstrated sufficient post-arraignment liberty restraints to implicate the Fourth Amendment. *See Rohman v. New York City Transit Auth.*, 215 F.3d 208, 216 (2d Cir. 2000). Naim was required to return to court following his arraignment and, like the plaintiff in *Rohman*, he was necessarily subject to travel restrictions when he

7

was released on his own recognizance in New York State, as he was required to "render himself at all times amenable to the orders and processes of the court." N.Y.Crim. Proc. Law § 510.40.

**C. Wrongful Entry**

After Naim pushed the stranger off the landing, the officers immediately ordered Naim into the house, where they effectuated the arrest. All three plaintiffs allege that the officers violated their Fourth Amendment right to be free from the warrantless intrusion of law enforcement into the home. Defendants reply that the entry was justified by exigent circumstances.

Warrentless entry of an individual's home by law enforcement is "presumptively unreasonable under the Fourth Amendment, unless exigent circumstances exist requiring entry before the officers could obtain a warrant." *United States v. Medina*, 916 F.2d 60, 68 (2d Cir. 1991). Exigent circumstances are present where, objectively, "law enforcement agents were confronted by an 'urgent need' to render aid or take action." *United States v. MacDonald*, 916 F.2d 766, 769 (2d Cir. 1990). Determining such exigency requires "examination of the totality of circumstances confronting law enforcement agents in the particular case." *Id.* Factors the Court may consider include:

> (1) the gravity or violent nature of the offense with which the suspect is to be charged; (2) whether the suspect "is reasonably believed to be armed"; (3) "a clear showing of probable cause ... to believe that the suspect committed the crime"; (4) "strong reason to believe that the suspect is in the premises being entered"; (5) "a likelihood that the suspect will escape if not swiftly apprehended"; and (6) the peaceful circumstances of the entry.

*United States v. Reed*, 572 F.2d 412, 424 (2d Cir. 1978). This list is illustrative, not exhaustive, and under the appropriate circumstances even a single factor may suffice. *See MacDonald*, 916 F.2d at 770. The defendants are entitled to qualified immunity on the unlawful entry claim if they had a reasonable, if mistaken, belief that their entry was justified by exigent circumstances. *See Ehrlich v. Town of Glastonbury,* 348 F.3d 48, 60 (2d Cir. 2003).

Whether the officers reasonably believe that they had urgent need to arrest Naim inside the house depends, in large part, on whether they had probable cause for the arrest. It also depends on the reasonableness of Sergeant Durante's decision that the only safe place to effectuate the arrest was inside the house. Whether the officers' actions were reasonable is a question best left to the jury.

**D. Excessive force**

Finally, Naim alleges that the officers used excessive force during the arrest by pushing him to the ground, banging his head into the floor, and applying handcuffs tightly enough to exacerbate a pre-existing injury.

Excessive force claims arising out of an arrest are analyzed under the Fourth Amendment's "objective reasonableness" standard. *Graham v. Connor*, 490 U.S. 386, 388 (1989). Determining what is reasonable requires a careful balancing of "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." *Tennessee v. Garner*, 471 U.S. 1, 8 (1985) (quoting *United States v. Place*, 462 U.S. 696, 703 (1983)). Considerations include "(1) the nature and severity of the crime leading to the arrest, (2)

whether the suspect poses an immediate threat to the safety of the officer or others, and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight." *Tracy v. Freshwater*, 623 F.3d 90, 94 (2d Cir. 2010). The situation must be evaluated from "the perspective of the officer at the time of the arrest, taking into account the fact that the officer may have been required to make a split-second decision." *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 573 (1996). Moreover, the officers are entitled to immunity if they reasonably misunderstood what constituted legal force under the circumstances. *See Saucier v. Katz*, 533 U.S. 194, 205 (2001).

In light of the open questions regarding probable cause, the force with which Naim pushed the stranger, the extent to which this push was only to prevent the stranger from entering the house and the violence of the officers' reaction, the reasonableness of the officers' response is for the jury to determine.

**III.**

Accordingly, defendants' motion for summary judgment is denied.

**SO ORDERED.**

s/ Judge Frederic Block
_____
FREDERIC BLOCK
Senior United States District Judge

Brooklyn, New York
July 17, 2012